**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **ANDREW BICKEL, on behalf of himself and others similarly situated,** | ) ) ) | |
| **Plaintiff,** | ) ) ) | **No. 25 C 3454** |
| **v.** | ) ) | **Judge Rebecca R. Pallmeyer** |
| **NORDIC ENERGY SERVICES, LLC,** | ) ) | |
| **Defendants.** | ) ) ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Plaintiff Andrew Bickel brings this lawsuit alleging that Defendant Nordic Energy Services, LLC ("Nordic") consistently overcharged him and other customers for gas via a "bait-and switch" scheme that ensnared him and similarly situated consumers. In his initial complaint, Bickel brought claims of breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, and violations of various states' consumer protection laws on behalf of himself and a proposed nationwide class.[1] He also alleged violations of the Indiana Deceptive Consumer Sales Act ("IDCSA") on behalf of a proposed sub-class of Indiana-based Nordic customers.

Nordic moved to dismiss that complaint under FED. R. CIV. P. 12(b)(6) and 12(b)(1). In a prior Order [39], the court granted the motion in part and denied it in part, dismissing Bickel's claim for an independent breach of the implied covenant of good faith and fair dealing, as well as claims made by Bickel on behalf of consumers in other states without prejudice.[2] Two of Bickel's claims survived the motion: the court found that Bickel had sufficiently alleged breaches of contract relating to two components in the contract's pricing provision, and violations of the IDCSA

---

[1]     Bickel voluntarily withdrew his unjust enrichment claim. *Bickel v. Nordic Energy Servs., LLC*, No. 25 C 3454, 2026 WL 444691, at *4 n.5 (N.D. Ill. Feb. 17, 2026)

[2]     Bickel has since filed an Amended Complaint [43].

on behalf of himself and his proposed Indiana-based sub-class. Nordic now moves for reconsideration of the court's decision to permit Bickel to move forward on his breach of contract claim relating to the transportation and storage component ("TSC") of the contract's pricing provision. As explained here, the court's language may have been inartful, but the court stands by its conclusion that Bickel's TSC claim is cognizable. Nordic's motion for reconsideration [44] is denied.

## **BACKGROUND**

The facts underlying this lawsuit were explained in detail in the court's opinion on Nordic's motion to dismiss. See *Bickel v. Nordic Energy Servs., LLC*, No. 25 C 3454, 2026 WL 444691, at *1 (N.D. Ill. Feb. 17, 2026). The court assumes the parties' familiarity with that order and with the procedural background of this case.

To briefly summarize: Bickel entered into an agreement with Nordic, an alternative energy supplier, for the provision of natural gas to Bickel's home in Indiana. In his initial complaint in this case, Bickel alleged that, based on the contract's pricing terms, Nordic overcharged him and other consumers for their residential natural gas. The pricing terms relevant to his complaint read as follows, with bracketed additions for the reader's ease in following the court's reasoning:

> [Sentence One:] Nordic Energy agrees to act as Customer's exclusive natural gas supplier as set forth in this Agreement and is offering Customer a fixed rate of $.0990 per therm for your metered usage for the first three (3) months of the term, for your natural gas, plus the other charges outlined below associated with gas delivery and storage.

> [Sentence Two:] After that, the price will be a variable price equal to Nordic's cost to acquire your supply plus 25 cents per therm.

> [Sentence Three:] Please note that the fixed price and the variable price apply only to the price of natural gas, not to the other charges associated with gas delivery including interstate pipeline demand and capacity charges as well as interstate transportation and storage and related storage capacity charges and or the LDC established pipeline and storage mitigation services.

> [Sentence Four:] Customer is responsible for these other charges relating to delivering gas to Customer's account(s).

2

> [Sentence Five:] Interstate transportation and capacity charges shall be billed to Customer at the rate listed for Nordic Energy on the NIPSCO Choice website.

(Mot. for Reconsideration [44] at 2.) Bickel alleged that Nordic overcharged him in two ways. The first overcharge is related to what the parties refer to as the "Variable Commodity Component" ("VCC") of the monthly gas charge. Bickel and Nordic agree that the VCC refers to "Nordic's cost to acquire" natural gas supply "plus 25 cents per therm." 2026 WL 444691, at *2. In its initial motion to dismiss, Nordic argued that Bickel failed to state a claim as to the VCC overcharge because the comparators he used to establish that overcharge were improper as a matter of law. The court rejected that argument, reasoning that because Nordic could, according to Bickel, purchase gas at the city-gate price,[3] the city-gate price was a proper comparator for assessing whether Nordic was overcharging customers. *Id.* at *4–5. Nordic does not ask the court to reconsider its decision on that claim.

Nordic does ask the court to reconsider its decision on Bickel's second contract claim: that Nordic breached by overcharging Bickel for the transportation and storage component ("TSC") of his monthly gas bill. What exactly the TSC is comprised of is of some dispute at this stage. In his initial complaint, and in his opposition to Nordic's motion to dismiss, Bickel argues that the TSC is cabined by Sentence Three of the pricing provision in his contract with Nordic. (Compl. [1] ¶ 49 (describing TSC as including "charges associated with gas delivery including interstate pipeline demand and capacity charges as well as interstate transportation and storage and related storage capacity charges"); Opp'n [21] at 12–13; 14 (describing TSC by, again, making reference to Sentence Three of the pricing provision; and outlining that "TSC charges are . . . described as 'charges associated with gas delivery' and 'including interstate pipeline demand charges' . . ."— language contained in Sentence Three.) Crediting Bickel's account, the court similarly referenced Sentence Three in its attempt to define the TSC. 2026 WL 444691, at *2 ("TSC is defined as 'the

---

[3]      As discussed in the court's previous Order, the city-gate price is the price of natural gas when it is transferred from inter- or intra-state pipelines to local utilities. (*See* Compl. [1] ¶ 40.)

other charges associated with gas delivery,' including transportation and storage costs, as well as additional charges referred to vaguely as 'storage capacity charges' and 'storage mitigation services.'").  In deciding that Bickel's TSC claim survived Nordic's motion to dismiss, the court determined that Sentence Five of the pricing provision—"Interstate transportation and capacity charges shall be billed to Customer at the rate listed for Nordic Energy on the NIPSCO Choice website"—could not be read independently of Sentence Three, which, in the court's words, "explicitly defined" what these interstate transportation and capacity charges were.  2026 WL 444691, at *7.  The court held that Bickel's reading of that provision in the contract—that the TSC should constitute only the expense of gas delivery, transportation, storage, and the like, without an additional profit-motivated markup—was reasonable, and based on the allegations outlined in his complaint regarding Nordic's persistent overcharging, Bickel had plausibly stated a claim for breach of the TSC provision.  (*See* Opp'n [21] at 14.)

Nordic asks the court to reconsider its decision, based on what it argues are errors of law and fact.  Nordic contends that 1) the court erred by reading Sentence Three of the pricing provision as defining the TSC, when that sentence instead, according to Nordic, modifies the VCC; and 2) the court "erred in overlooking Sentence Five's promise to charge published rates." (Mot. for Reconsideration [44] at 10 (cleaned up).)  For the reasons outlined below, the motion is denied.

## DISCUSSION

A Motion for Reconsideration serves a limited function.  Generally, such motions must be based on a manifest error of law or fact or on newly discovered evidence.  *Lightspeed Media Corp. v. Smith*, 830 F.3d 500, 505–06 (7th Cir. 2016); *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 954 (7th Cir. 2013); *Blue v. Hartford Life & Accident Ins. Co.*, 698 F.3d 587, 598 (7th Cir.2012).  Importantly, they are not vehicles for "rehashing previously rejected arguments." *Vesely v. Armslist LLC*, 762 F.3d 661, 666 (7th Cir. 2014).  Nor are they an opportunity "to

4

advance arguments or theories that could and should have been made before the district court rendered a judgment." *Miller v. Safeco Ins. Co. of America*, 683 F.3d 805, 813 (7th Cir. 2012).

Nordic takes much issue with the court's use of the phrase "explicitly defined," when the court determined that the charges contained in the TSC were limited to the charges listed in Sentence Three of the price provision: "charges associated with gas delivery including interstate pipeline demand and capacity charges as well as interstate transportation and storage and related storage capacity charges and or the LDC established pipeline and storage mitigation services."[4] (Mot. for Reconsideration [44] at 4–5.) Nordic argues the court's "idea that Sentence Three defines the TSC was the Court's alone—it was not an issue presented by the parties." (*Id.* at 6.) This, in Nordic's view, is an independent basis for reconsideration. (*Id.*) But in so arguing, Nordic entirely overlooks Bickel's reference to Sentence Three in his description of the TSC contained in his initial complaint and his opposition brief to Nordic's motion to dismiss (Compl. [1] ¶ 49 ; Opp'n [21] at 12–13, 14), a description Nordic did not explicitly challenge in its 12(b)(6) briefing. (See Mot. to Dismiss [17] at 5–6.) The court notes that a motion to reconsider "is not a mechanism that allows a party to revisit strategic decisions that prove to be improvident, to make arguments that could and should have been made in prior briefing, to express mere disagreement with a decision of the court, or to reprise or 'rehash' arguments that were rejected." *Terese F. v. Saul*, 396 F. Supp. 3d 793, 794–95 (N.D. Ill. 2019). Nordic's argument here veers dangerously close to that. Though this may well be an independent basis for denial of Nordic's motion to reconsider, the court denies the motion on other grounds.

While the use of the phrase "explicitly defined" may have been inartful, the court stands by its original conclusion: Bickel's reading of the contract is a plausible one. Nordic's argument appears to be that the meaning of the TSC is exclusively a reference to the charge listed on the

---

[4] The court accepts Nordic's contention that the LDC—the local utility's delivery charges—is a separate line-item on a customer's monthly gas bill from the TSC and withdraws its finding that the TSC includes the LDC.

NIPSCO website each month—untethered even from what those charges are as listed in Sentence Five: "Interstate transportation and capacity charges"— and that Sentence Three does not cabin the charges Nordic can level as part of the TSC. (Mot. for Reconsideration [44] at 6 ("Sentence Three does not say what the TSC is at all.").) Such piece-meal contract interpretation is suspect: it is a "basic principle of contract interpretation" that each sentence in the pricing provision should be considered as part of a whole. *Bullar v. Archway Skydiving Ctr., Inc.*, No. 11-CV-0468-MJR, 2012 WL 12842793, at *1 (S.D. Ill. Mar. 1, 2012) ("Defendant's argument that a single sentence in a contract should be read in isolation from the rest of a clause, or the contract as a whole, violates a basic principle of contract interpretation." (citing *Quality Oil, Inc. v. Kelley Partners, Inc.*, 657 F.3d 609, 613 (7th Cir. 2011))); *see also Steiner v. Bank One Ind., N.A.*, 805 N.E.2d 421, 424–25 (Ind. Ct. App. 2004) ("In interpreting a contract, we are compelled to view a particular section as a whole rather than examine each phrase therein in isolation.") A plausible reading of the contract, indeed perhaps the best one, is that Nordic's pricing discretion in Sentence Five is cabined by the language in Sentence Three. Nordic's apparent belief that the contract gives it immense discretion to charge whatever it wants with no limiting principle is simply not persuasive in light of the contract's plain language, and in any event, is no reason to dismiss this case at the pleading stage.

At this stage, the court need not resolve this dispute in favor of either party; it need only determine whether Bickel's reading of the contract is plausible. The court stands by its determination that it is. *Bickel,* 2026 WL 444691, at *5 ("When evaluating a Rule 12(b)(6) motion to dismiss, ambiguities in the contract are resolved in favor of the plaintiff if one reasonable way of interpreting ambiguous language would support a claim." (citing *LaSalle Commercial Mortg. Sec., Inc. v. Bank of Am., N.A.*, No. 13 C 5605, 2014 WL 4124249, at *4 (N.D. Ill. Aug. 21, 2014))).

The court withdraws its finding that the TSC is "explicitly defined" by Sentence Three of the pricing provision. Still, this arguably poor phrasing does not warrant the court's reconsideration on the ultimate outcome of Nordic's motion to dismiss the TSC claim. *Strebel v.*

6

*Scoular*, No. 24 C 968, 2024 WL 4903907, at *3 (N.D. Ill. Nov. 27, 2024) ("[T]his Court's opinions are not intended as mere first drafts, subject to revision and reconsideration at a litigant's pleasure." (quoting *Quaker Alloy Casting Co. v. Gulfco Industries, Inc.*, 123 F.R.D. 282, 288 (N.D. Ill. 1988) (Shadur, J.))).   Nordic is welcome to present the arguments raised in its motion to reconsider again at a later, more appropriate, stage of the proceedings.   At this phase, however, they are not sufficient to warrant dismissal of Bickel's claim.

### **CONCLUSION**

The motion for reconsideration [44] is denied.


ENTER:


Dated: May 14, 2026

_____
REBECCA R. PALLMEYER
United States District Judge


7